William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

*Attorneys for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA MUNOZ, JENNIFER WILKINSON, KATHERINE HETHERTON, and MICHELLE IRWIN, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PEET'S COFFEE, INC., a Virginia Corporation,<br><br>        Defendant. | Case No.: 4:24-cv-01764-JST<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, VERONICA MUNOZ, JENNIFER WILKINSON, KATHERINE HETHERTON, and MICHELLE IRWIN (referred to individually as "Plaintiff" or collectively as "Plaintiffs") bring this First Amended Class Action Complaint against the above-named PEET'S COFFEE, INC., a Virginia Corporation, ("Defendant" or "Peet's"), and in support thereof states the following:

**INTRODUCTION**

1.      Plaintiffs bring this action against Peet's on behalf of all consumers in California, Texas, Massachusetts and in the United States who, within four years of the filing of this lawsuit, have purchased coffee-based drinks, tea-based drinks, or other beverages from Peet's that contained non-dairy milk alternatives such as oat milk or almond milk ("Non-Dairy Alternatives") and paid a surcharge for the Non-Dairy Alternatives, including plant-based or lactose-free milk.

2.      Plaintiffs suffer from lactose intolerance and milk allergies. It is medically necessary for persons like Plaintiffs to avoid consuming drinks that contain milk. Plaintiffs ordered coffee-based, tea-based, and other drinks at Peet's retail coffee shops in their respective states of residence from at least 2020 to the present.

3.      When Plaintiffs visited Peet's coffee shops, they ordered drinks that included milk as part of the regular menu item. Plaintiffs requested to substitute milk for Non-Dairy Alternatives, specifically oat milk, soy milk or almond milk and were charged an extra at least $0.80 surcharge by Peet's for the substitution, depending on the date and the location of the store.

4.       Peet's charged at least an $.80 surcharge to the Plaintiffs and its customers who were lactose intolerant and had milk allergies to substitute milk for Non-Dairy Alternative products in its beverages throughout the Class Period ("Surcharge").

5.      Defendant's Surcharge is the same for all Non-Dairy Alternatives, making no distinction among the costs of the various different Non-Dairy Alternatives and does not apply to any type of milk or milk product.

6.      In 2023, the average price of a Peet's crafted coffee drink was $4.00, therefore the Surcharge could be up to 20% of the average drink price. Also, milk is not the only ingredient in a drink at Peet's, therefore the Surcharge represents an even higher percentage proportional to the price of milk (up to 200%).

FIRST AMENDED CLASS ACTION COMPLAINT

7.   There is no material difference between the price of lactose-containing milks and the price of Non-Dairy Alternatives that would support levying the Surcharge to substitute for a Non-Dairy Alternative in Peet's drinks.

8.   Peet's standard offering in most beverages is 2% cow's milk.

9.   Peet's will substitute whole milk, or fat-free skim milk for the 2% milk ingredient to its beverages at no additional charge.

10.   Peet's offers several options when it comes to the content of fat in the milk but does not offer a lactose-free milk option.

11.   Peet's will modify its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension.

12.   Peet's will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight.

13.   There is no expertise or additional work required of Peet's employees that would substitute whole milk or fat-free milk in place of 2% regular milk, or who would make caffeine-free or sugar-free beverages, to also be able to substitute Non-Dairy Alternatives such as almond or oat, or other lactose-free "milk" in place of 2% regular milk.

14.   Lactose intolerance is a disability.

15.   A milk allergy is a disability.

16.   Peet's charges customers with lactose intolerance and milk allergies an excessively high Surcharge to substitute Non-Dairy Alternatives in its drinks.

17.   In this way, Defendant's conduct violates the Americans with Disabilities Act, California Unruh Civil Rights Act, Texas Human Resource Code, Massachusetts Anti-Discrimination Law, and constitutes common law Unjust Enrichment.

18.   Defendant discriminates against Plaintiffs and the putative class members by levying a Surcharge for its Non-Dairy Alternatives in the form of Non-Dairy Alternatives added to its coffee-based drinks and other beverages.

19.   Plaintiffs also seek declaratory and injunctive relief to ensure that Defendant charges

the same price to lactose intolerant customers and customers with milk allergies for the same menu items as regular customers and that it does not add a Surcharge for Non-Dairy Alternatives such as almond milk, oat milk or other lactose-free "milk."

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332(d). This is a putative class action where: (i) the proposed nationwide class consists of more than 100 members; (ii) at least one class member has a different citizenship from Defendant; and (iii) the claims of the proposed class exceed $5,000,000 in the aggregate. The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

21. The Court has personal jurisdiction over the Defendant due to its continuous and systemic contacts with the State of California. Defendant operates more than 200 retail stores within the State of California, including within the Northern District of California.  Defendant's principal place of business is located in Emeryville, California, within the Northern District of California.

22. Plaintiffs Munoz and Irwin reside in California. A substantial part of the events or omissions giving rise to the claim occurred in the State of California.

23. Venue is proper in the Northern District of California, pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## THE PARTIES

**A.    Plaintiffs**

    a.  Veronica Munoz

24. Plaintiff Veronica Munoz is and was at all times material a resident of the State of California. Ms. Munoz has purchased items, including coffee-based drinks, at various Peet's locations in San Jose and throughout the state of California.

25. As a result of her lactose intolerance, Ms. Munoz is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives.

26. Ms. Munoz has been advised by a medical doctor to avoid any dairy products.

27. Ms. Munoz will suffer adverse health consequences and physical symptoms if she consumes dairy milk, including but not limited to bloating, diarrhea, indigestion, excessive gas,

FIRST AMENDED CLASS ACTION COMPLAINT

nausea, vomiting, abdominal pain, cramping and fatigue.  Ms. Munoz also suffers severe migraine headaches caused by the nausea and vomiting.

28.     Ms. Munoz's lactose intolerance affects her daily social activities, work and family activities.  It affects her ability to extracurricular social plans and limits attendance at events because the physical symptoms, such as vomiting, can be very debilitating.

29.     As a result, Ms. Munoz must pay careful attention to the beverages she drinks and cannot consume dairy milks such as 2% milk, whole milk or skim milk.

30.     Ms. Munoz has consumed Peet's beverages at various Peet's retail outlets in California and plans to continue to do so in the future.

31.     Ms. Munoz has paid the Surcharge for Non-Dairy Alternatives during the Class Period.

b.     Jennifer Wilkinson

32.     Plaintiff Jennifer Wilkinson is and was at all times material a resident of the State of Texas. Ms. Wilkinson has purchased items, including coffee drinks, at various Peet's' locations throughout the state of Texas.

33.     As a result of her lactose intolerance and milk allergy, Ms. Wilkinson is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives.

34.     Because of her lactose intolerance and milk allergy, Ms. Wilkinson has been advised by a medical doctor to avoid any dairy products.

35.     Ms. Wilkinson will suffer adverse health consequences and physical symptoms if she consumes dairy milk, including but not limited to bloating, diarrhea, indigestion, excessive gas, nausea, abdominal pain, cramping, rashes, hives and fatigue.

36.     Ms. Wilkinson's lactose intolerance and milk allergy affects her daily social activities, work and family activities.

37.     Ms. Wilkinson has consumed Peet's beverages at various Peet's retail outlets in Texas and plans to continue to do so in the future.

38.     Ms. Wilkinson has paid the Surcharge for Non-Dairy Alternatives during the Class Period.

c.     Michelle Irwin

- 5 -

39. Plaintiff Michelle Irwin is and was at all times material a resident of the State of California. Ms. Irwin has purchased items, including coffee-based and tea-based drinks containing non-dairy milk alternatives, at various Peet's' locations throughout the state of California.

40. As a result of her lactose intolerance, Ms. Irwin is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives.

41. Because of her lactose intolerance, Ms. Irwin must avoid any dairy products.

42. Ms. Irwin will suffer adverse health consequences and physical symptoms if she consumes dairy milk, including but not limited to bloating, diarrhea, indigestion, excessive gas, nausea, abdominal pain, cramping and fatigue.

43. Ms. Irwin's lactose intolerance affects her daily social activities, work and family activities.

44. Ms. Irwin has consumed Peet's beverages at various Peet's retail outlets in California and plans to continue to do so in the future.

45. Ms. Irwin has paid the Surcharge for Non-Dairy Alternatives during the Class Period.

      d. Katherine Hetherton

46. Plaintiff Katherine Hetherton is and was at all times material a resident of the State of Massachusetts. Ms. Hetherton has purchased items, including coffee drinks, at various Peet's' locations in Massachusetts.

47. Ms. Hetherton has been diagnosed by a medical doctor with lactose intolerance, irritable bowel syndrome (IBS) and polycystic ovary syndrome (PCOS). Ms. Hetherton has been advised by a medical doctor to avoid dairy products because of these medical conditions.

48. As a result of her lactose intolerance, IBS and PCOS, Ms. Hetherton is substantially impaired in several major life activities and is required to consume non-dairy milk alternatives.

49. Ms. Hetherton will suffer adverse health consequences and physical symptoms if she consumes dairy milk, including but not limited to bloating, diarrhea, indigestion, excessive gas, nausea, abdominal pain, cramping, malaise, fatigue and joint pain.

50. Ms. Hetherton's lactose intolerance affects her daily social activities, work and family activities.

FIRST AMENDED CLASS ACTION COMPLAINT

51.     On at least one occasion, Ms. Hetherton has told the Peet's server that she cannot consume milk due to her medical condition and has still been charged a Surcharge for non-dairy alternatives by Peet's.

52.     Ms. Hetherton has consumed Peet's beverages at various Peet's retail outlets in Massachusetts and plans to continue to do so in the future.

53.     Ms. Hetherton has paid the Surcharge for Non-Dairy Alternatives during the Class Period.

**B.     Defendant**

54.     Defendant Peet's Coffee, Inc. is incorporated in the State of Virginia and its principal place of business is located at 1400 Park Avenue, Emeryville, CA 94608. Peet's operates over 280 coffee stores in the United States and over 200 in the state of California.

## BACKGROUND FACTS

55.     Plaintiffs are lactose intolerant or have a milk allergy, requiring that they each consume drinks that do not contain lactose or lactose-based products, which includes milk and many milk-containing products.

56.     Plaintiffs will suffer adverse health effects if they ingest milk or milk-containing products, including stomach pain, digestive tract inflammation, bloating, bowel irregularities and vomiting. As a result, Plaintiffs must pay very careful attention to the drinks they consume and can only consume non-dairy products in drinks that contain Non-Dairy Alternatives including lactose-free milk.

57.     Plaintiffs' disability limits the major life activities of drinking (and the nutritional benefits from ingesting drinks), and digestion.

58.     Lactose intolerance is a disability that makes it difficult to digest lactose. Lactose is a type of natural sugar found in milk and dairy products.

59.     When lactose moves through the large intestine without being properly digested, it can cause gas, bloating, belly pain and diarrhea. Many people who have a lactose intolerance cannot eat or drink any amount of milk or milk-containing products.

60.     Persons with lactose intolerance and milk allergies experience various levels of

- 7 -

reactions to the ingestion of milk and milk-containing products, including a bloated stomach, intestinal gas, nausea and vomiting, stomach pain and cramping, and diarrhea.

61. Lactose intolerance occurs when the small intestine does not make enough of an enzyme called lactase. The body needs lactase to break down and digest lactose. A person's body may stop making lactase after a short-term illness such as an infection or as part of a lifelong chronic disease such as cystic fibrosis.

62. A dairy allergy, or milk allergy, occurs when the immune system overreacts to the presence of proteins in milk. When a person with a dairy allergy encounters products containing dairy, it results in their immune system overreacting.

63. A main type of milk allergy, Immunoglobulin E (IgE) refers to a type of antibody that the immune system may produce after recognizing a foreign substance, the presence of milk and dairy products.

64. With IgE, the immune system mistakenly determines that dairy proteins are harmful and responds by releasing chemicals, such as histamine. This release of chemicals causes symptoms of an allergic response, which occur immediately. The symptoms may include swelling, breathing problems, rashes, loss of consciousness and anaphylaxis.

65. A second type of milk allergy, non-IgE, may be confused with lactose intolerance in some people because often reactions do not appear as quickly and can cause gastrointestinal systems such as vomiting, bloating and diarrhea.

66. Because of their milk allergies, Plaintiffs must order Non-Dairy Alternatives at Peet's containing Non-Dairy Alternatives such as almond milk, oat milk, or other lactose-free "milk." Plaintiffs have, on every occasion, been levied the Surcharge by Peet's for Non-Dairy Alternatives in their coffee drinks ordered and consumed from Defendant's stores in numerous states, including California, Texas, and Massachusetts.

67. The Non-Dairy Alternative Surcharge has real and practical consequences for consumers suffering from lactose intolerance and milk allergies. A consumer will pay at least $0.60-$2.00 more for a coffee-based drink at Peet's for Non-Dairy Alternatives. Non-Dairy Alternatives, which do not contain lactose, are medically necessary for individuals with lactose intolerance and

1  milk allergies. For those persons, the use of these Non-Dairy Alternatives is not a choice.

2       68.     And this surcharge is not justified by the costs of the Non-Dairy Alternatives.  There
3  are no additional labor costs associated with using a Non-Dairy Alternative Surcharge in a beverage.
4  Additionally, the retail cost of Non-Dairy Alternatives is not significantly more than dairy products
5  (if at all).  For example, as of the filing of this complaint, Whole Milk was priced at between $0.03-
6  05 per fluid ounce, Half & Half between $0.09-19 per fluid ounce, and Heavy Cream between $0.17-
7  32 per fluid ounce.  Yet, coconut, oat and soy milk only sells for between $0.06-07 per fluid ounce.
8  Similarly, almond milk sells for between $0.04-07 per fluid ounce.  Accordingly, the retail price of
9  Whole Milk, Half & Half, and Heavy Cream (which is provided for free by Defendant) is the same,
10 if not more, than their Non-Dairy Alternatives.

11      69.     Accordingly, Non-Dairy Alternative Surcharges are not to defray the added costs of
12 use of these ingredients. Instead, the Surcharges are designed to profit from those consumers with
13 lactose intolerance and milk allergies. Indeed, only Non-Dairy Alternative incur a surcharge, when
14 cream may be more expensive than any other Non-Dairy Alternative.

15      70.     Without the availability of Non-Dairy Alternatives options, consumers with lactose
16 intolerance and milk allergies are deprived of the opportunity to enjoy consuming Peet's' coffee
17 beverages and drinks with their friends, family, and business associates.

18      71.     Upon information and belief, Peet's sells in excess of 1 million coffee-based drinks
19 per day at its retail stores in the United States.

20      72.     Various studies in the United States concluded that the portion of the U.S. population
21 that is lactose intolerant is at least 12% and may be as high as 48%.

22      73.     Lactose intolerance is common in adults, almost 30 million persons in the United
23 States have it by the age of 20.

24      74.     Dairy allergies are one of the most common allergies. In the United States, greater than
25 15 million people have a milk or dairy allergy.

26      75.     Upon information and belief, Peet's annual revenue in 2022 from sales at its retail
27 stores in the United States exceeded $1 billion dollars and exceeded $7 billion dollars worldwide.

28      76.     Peet's is one of the largest coffee chains in the United States.

- 9 -

FIRST AMENDED CLASS ACTION COMPLAINT

77.     Because of its size, Peet's has the power to control the manufacturing costs for Non-Dairy Alternatives.

78.     Upon information and belief, Peet's has earned over $200 million dollars in the United States as a result of its discriminatory and illegal levying of the Surcharge during the Class Period.

79.     In April 2023, Peet's eliminated in non-dairy milk alternatives surcharge for an entire month.  One of the purposes of eliminating the Surcharge for this month was to better understand demand among Peet's customers in the future and to gain insight into eliminating the Surcharge for good.

80.     Many coffee chains in the United States have eliminated the non-dairy milk alternative Surcharge, including Blue Bottle, Philz and Tim Hortons.

81.     The largest coffee chain in the world, Starbucks Corporation, has eliminated the Surcharge at many of its international locations including in the European Union.

82.     Upon information and belief, Peet's has not eliminated the Surcharge at its international locations and levies a flat charge on whole and skim milk in addition to non-dairy alternatives such as oat and soy milk.  However, Peet's Surcharge at its international locations is significantly smaller compared to the price of the drink and not related to the origin of the milk.

## CLASS ALLEGATIONS

83.     Plaintiff brings this action as a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

**National Class**: All persons who (1) suffer from lactose intolerance, or an intolerance to milk or milk-containing products, or milk allergies; and (2) who purchased drinks or other items from Peet's within four years prior to the filing of the Complaint and continuing to the present.

**California Subclass**: All persons who (1) are citizens of California; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Peet's in California within two years prior to the filing of the Complaint and continuing to the present.

**Massachusetts Subclass**: All persons who (1) are citizens of Massachusetts; (2) suffer from lactose intolerance, or an intolerance to milk or milk-containing products; and (3) who purchased drinks or other items from Peet's in Massachusetts within two years prior to the filing of the Complaint and continuing to the present.

**Texas Subclass**: All persons who (1) are citizens of Texas; (2) suffer from lactose

intolerance, or an intolerance to milk or milk-containing products, or milk allergies; and (3) who purchased drinks or other items from Peet's in Texas within two years prior to the filing of the Complaint and continuing to the present.

The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

84.    Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

85.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

86.    The potential members of the class are so numerous that joinder of all members of the class is impractical. Although the precise number of putative class members has not been determined at this time, Plaintiffs are informed and believe that the proposed classes include hundreds of thousands of members.

87.    There are common questions of law and fact that predominate over any questions affecting only individual putative class members.

88.    Plaintiffs' claims are typical of the claims of the members of the putative class because Plaintiff ordered and consumed drinks at Defendant's stores, ordered Non-Dairy Alternatives and incurred a Surcharge for that alternative milk during the applicable class period. Plaintiffs and each class member sustained similar injuries arising out of Defendant's conduct in violation of law. The injuries of each member of the class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all members of the putative class and represents a common thread of misconduct resulting in injury to all members of the class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of putative class members and are based on the same legal theory.

89.    A class action is superior to other available means for the fair and efficient adjudication

FIRST AMENDED CLASS ACTION COMPLAINT

of this controversy. Individual joinder of putative class members is not practicable and questions of law and fact common to the class members predominate over any questions affecting only individual putative class members.

90.     Each member of the putative class has been damaged and is entitled to recovery by reason of Defendant's illegal acts.

91.     Class action treatment will allow those similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

92.     Plaintiffs are unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action.

93.     The disposition of all claims of the members of the class in a class action, rather than individual actions, benefits the parties and the Court. The interests of the class members in controlling prosecution of separate claims against the Defendant is small when compared to the efficiency of a class action.

94.     Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs' Counsel and for the putative class members are experienced and competent in litigating class actions.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE III OF AMERICANS
### WITH DISABILITIES ACT
(On Behalf of all Plaintiffs and all other similarly situated National Class Members)

95.     The allegations contained in Paragraphs 1-94 of the First Amended Complaint are incorporated by reference as if fully set out herein.

96.     Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons members of the National Class.

97.     Defendant is a public accommodation under the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12181 (7)(B), and consequently Defendant is prohibited from discriminating against Plaintiffs and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges and advantages provided by

FIRST AMENDED CLASS ACTION COMPLAINT

1   Defendant.

2       98.    The ADA requires that a "public accommodation shall make reasonable modifications

3   in policies, practices, or procedures, when the modifications are necessary to afford good, services,

4   facilities, privileges, advantages or accommodations to individuals with disabilities[.]". 28 C.F.R. §

5   36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to

6   make reasonable modifications when necessary to afford goods, services, facilities, privileges,

7   advantages, or accommodations to individuals with disabilities).

8       99.    The ADA makes it discriminatory to afford an individual or class of individuals, on

9   the basis of a disability or disabilities of such individual or class, directly, or through contractual,

10  licensing, or other arrangements with the opportunity to participate in or benefit from a good, service,

11  facility, privilege, advantage or accommodation that is not equal to that afforded to other

12  individuals[.]" 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory

13  for a public accommodation to deny disabled persons the opportunity to participate in or benefit from

14  goods, services, privileges, advantages, or accommodations).

15      100.   The ADA requires that a "public accommodation shall make reasonable modifications

16  in policies, practices, or procedures, when the modifications are necessary to afford goods, services,

17  facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. §

18  36.302(a).

19      101.   Under the ADA, if an establishment already makes alterations or modifications, or

20  takes special orders for its customers, it must do so for the disabled customer requests as well. *See* 28

21  C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the

22  request of an individual with disabilities, if, in the normal course of its operation, it makes special

23  orders on requests for unstocked goods, and if the accessible or special goods can be obtained from a

24  supplier with who the public accommodation customarily does business.").

25      102.   Most importantly, the ADA provides that a "public accommodation may not impose a

26  surcharge on a particular individual with a disability or any group of individuals with disabilities to

27  cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to

28  barrier removal, and reasonable modifications in policies, practices, or procedures, that are required

to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

103.    The ADA Amendments Act of 2008 ("ADAAA") was passed to restore the intent and protections of the Americans with Disabilities Act of 1990. The ADAAA contained specific Congressional Findings that the amendments were intended to address and reject United States Supreme Court decisions that had incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities. Specifically, the ADAAA cited to the following holdings as having been incorrectly decided: 1) *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002).

104.    The clear Congressional intent of the ADAAA was to expand and broaden the disabilities that are included for protection under the ADA.

105.    Section 4(a) of the ADAAA amends Section 3 of the ADA to include the following language under Section 4 Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.

106.    Lactose intolerance and milk allergies are a disability under the ADA. The ADA defines a disability, in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). An impairment means "[a]ny physiological disorder or condition that affects "one or more body systems," such as the neurological, digestive, or immune systems. 28 C.F.R. 36.105(b)(1)(i). An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."

107.    Drinking beverages, including coffee drinks, is a major life activity.

108.    Digestion is a major and vital life activity.

109.    Defendant violates the ADA because, as alleged above, it fails to make modifications to persons with lactose intolerance and milk allergies but instead imposes a surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material

difference between the costs of regular milk and Non-Dairy Alternatives.

110.    As a direct result of Defendant's violation of the ADA, Plaintiffs and class members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as a result of Defendant's illegal price discrimination. Therefore, Plaintiffs and the putative class members are entitled to damages and injunctive relief.

111.    Defendant's actions were willful, wanton, malicious, and intentional, and were done in willful and conscious disregard of the rights of Plaintiffs and the putative class members. Defendant's actions were done with the express knowledge, consent, and ratification of Defendant's managerial employees and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at trial.

**COUNT II**
**VIOLATION OF CALIFORNIA'S UNRUH**
**CIVIL RIGHTS ACT (CA)**
(On Behalf of Veronica Munoz and Michelle Irwin, and all other similarly situated California Subclass Members)

112.    The allegations contained in paragraphs 1-94 of the First Amended Complaint are incorporated by reference as if fully set out herein. Plaintiffs Munoz and Irwin assert this count on her own behalf and on behalf of the California subclass, as defined above.

113.    California's Unruh Act provides, "All persons within the jurisdiction of this state are free and equal, and no matter their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

114.    The Unruh Act prohibits businesses from engaging in unreasonable, arbitrary, or invidious discrimination, including through the unequal treatment of patrons. For example, businesses may not offer discounts to some classes of patrons but require full price from other patrons, where the price difference is based on arbitrary, class-based generalizations (such as gender).

115.    The Unruh Act provides that whoever "denies, aids or incites a denial, or makes any discrimination or distinction contrary to [the Act]" is liable for each and every offense, up to three

FIRST AMENDED CLASS ACTION COMPLAINT

1  times the amount of actual damages but in no case less than $4,000 plus attorneys' fees. *Id* at § 52(a).

2       116.   Defendant's conduct constitutes a violation of California's Unruh Act, Cal. Civ. Code

3  § 51, *et seq.* Defendant's practice of surcharging Non-Dairy Alternatives purchased by consumers

4  who are lactose intolerant constitutes price discrimination in violation of the Unruh Act.

5  **Intentional Discrimination**

6       117.   The Surcharge constitutes intentional discrimination against persons with lactose

7  intolerance and milk allergies. Defendant created a surcharge targeted to persons with lactose

8  intolerance, because Defendant accommodates other customers' dietary preferences and allergies free

9  of charge but imposes a surcharge only on persons with lactose intolerance.

10       118.   As alleged above, Defendant provides modifications or substitutes for persons with

11  heart conditions (caffeine-free) or diabetes (sugar-free) at no additional charge. Consumers with these

12  dietary preferences pay no additional money for the accommodations Defendant affords them.

13       119.   Consumers who need Non-Dairy Alternatives because of their disability, specifically

14  lactose intolerance, are targeted for the Surcharge because of their specific medical condition.

15       120.   Defendant is making a choice to impose the Surcharge for necessary beverage

16  modifications for one class of persons with a specific disability, lactose intolerance, while at the same

17  time not imposing any extra charge for those persons with another medical condition. This is the

18  essence of intentional discrimination.

19       121.   Defendant is disproportionately profiting from their customers with lactose

20  intolerance.

21       122.   Defendant's Surcharge greatly exceeds the amount of any minimal difference in costs

22  associated with Non-Dairy Alternatives.

23       123.   Defendant's Surcharge is the same for all Non-Dairy Alternatives, making no

24  distinction among the costs of the various different Non-Dairy Alternatives.

25       124.   Defendant is intentionally profiting from the sale of Non-Dairy Alternatives at the

26  expense of those persons with lactose intolerance.

27  **Violations of the ADA**

28       125.   A violation of the federal Americans with Disabilities Act (*see* 42 U.S.C. § 12111(9),

1    42 U.S.C. § 12182(a)) also constitutes a violation of the Unruh Act, Cal Civ. Code § 51(f).

2        126.    Defendant is a public accommodation under the ADA, (*see* 42 U.S.C. § 12181(7)(B),
3    and consequently Defendant is prohibited from discriminating against Plaintiff and other members of
4    the putative class on the basis of disability in the full and equal enjoyment of the goods, services,
5    facilities, privileges, and advantages offered by Defendant.

6        127.    The ADA requires that "a public accommodation shall make reasonable modifications
7    in policies, practices, or procedures, when the modifications are necessary to afford good, services,
8    facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R.
9    36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to
10    make reasonable modifications when necessary to afford goods, services, facilities, privileges,
11    advantages, or accommodations to individuals with disabilities).

12        128.    The ADA makes it "discriminatory to afford an individual or class of individuals, on
13    the basis of a disability or disabilities of such individual or class, directly, or through contractual,
14    licensing, or other arrangements with the opportunity to participate in or benefit form a good, service,
15    facility, privilege, advantage, or accommodation that is not equal to that afforded to other
16    individuals[.]". 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory
17    for a public accommodation to deny disabled persons the opportunity to participate in or benefit from
18    goods, services, privileges, advantages or accommodations).

19        129.    The ADA requires that "a public accommodation shall make reasonable modifications
20    in policies, practices, or procedures, when the modifications are necessary to afford goods, services,
21    facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. §
22    36.302(a).

23        130.    Under the ADA, if an establishment already makes alterations or modifications, or
24    takes special orders for its customers, it must do so for disabled customer requests as well. *See* 28
25    C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the
26    request of an individual with disabilities, if, in the normal course of its operation, it makes special
27    orders on request for unstacked goods, and if the accessible or special goods can be obtained from a
28    supplier with whom the public accommodation customarily does business."). Special foods are

expressly included among special orders. *See* 28 C.F.R. § 36.307(c) ("Examples of accessible or special goods includes items such as Braille versions of books, books on audio cassettes, closed-captioned video tapes, special sizes or lines of clothing, and special foods to meet particular dietary needs.")

131.    Importantly, the ADA provides that "a public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

132.    Defendant violates the ADA because, as alleged above, it fails to make modifications that are necessary to afford goods and services to persons with lactose intolerance but instead imposes a surcharge on this group, purportedly to cover the cost of such measures.

133.    Moreover, also as alleged above, although Defendant already offers modifications to non-disabled customers free of charge, it fails to offer persons with lactose intolerance this same goods and services free of charge.

134.    Finally, Defendant's policy of charging all customers a surcharge for Non-Dairy Alternatives disproportionately affects persons with lactose intolerance, regardless of any express intent by Defendant to discriminate against this group.

135.    As a direct and proximate cause of Defendant's violation of the Unruh Act, Plaintiffs Munoz and Irwin and California Subclass members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as the result of the illegal Surcharge. Therefore, they are entitled to damages and injunctive relief.

136.    The aforementioned acts of Defendant were willful, wanton, malicious, intentional, oppressive, and despicable and were done in willful and conscious disregard of the rights of Plaintiffs and class members, and were done by managerial agents and employees of Defendant, or with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of

the trial.

137.    Under the Unruh Act, a Plaintiff is entitled to recover actual damages and an amount up to three times the actual damages for each violation of the Unruh Act, "but in no case less than $4,000…" for each and every offense (Cal. Civ. Code § 52(a).

138.    Plaintiff and Class members are entitled to actual and treble damages for Defendant's violation of the Unruh Act.

//

**COUNT III**
**MASSACHUSETTS DISCRIMINATION**
(On Behalf of Plaintiff Katherine Hetherton and Massachusetts
Subclass Members for violation of Massachusetts Anti-Discrimination Law)

139.    Plaintiff Hetherton realleges and incorporates by reference the allegations in paragraphs 1-94 of this First Amended Complaint as if fully set forth herein.

140.    Massachusetts prohibits "… any distinction, discrimination or restriction on account of physical or mental disability, … [in] his treatment in any place of public accommodation…" *Mass Gen. Laws ch. 272, § 98*.

141.    A place of public accommodation is any place "which is open to and accepts or solicits the patronage of the general public" and includes a "retail store or establishment." *Id.* 272, §§ 92A & 92A(3).

142.    Peet's stores are a public accommodation as defined in 272, §§ 92A.

143.    Plaintiff Hetherton and the Massachusetts Subclass Members who were charged the Surcharge for Non-Dairy Alternatives seek minimum statutory damages under 272, § 98.

144.    Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Peet's has, directly denied to Plaintiff Hetherton, and the Massachusetts Subclass Members, because of their disabilities, the full and equal enjoyment of its goods, services, privileges, advantages and accommodations.

145.    Plaintiff Hetherton and the Massachusetts Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

**COUNT IV**
**TEXAS DISCRIMINATION**

FIRST AMENDED CLASS ACTION COMPLAINT

(On Behalf of Plaintiff Jennifer Wilkinson and Texas Subclass
Members for violation of the Texas Human Resource Code)

146.    Plaintiff Jennifer Wilkinson realleges and incorporates by reference the allegations in paragraphs 1-94 of this First Amended Complaint as if fully set forth herein.

147.    The Texas code states "[p]ersons with disabilities have the same rights as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code Ann. § 121.003(a).

148.    "'Public facilities' includes … any other place of public accommodation, …[or] convenience, … to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited." *Id.* § 121.002(5).

149.    Peet's stores are public facilities as defined in § 121.002(5). Defendant is prohibited from discriminating against Plaintiff and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, and advantages offered by Defendant.

150.    Plaintiff Wilkinson and the Texas Subclass Members who were charged the Surcharge for Non-Dairy Alternatives seek minimum statutory damages under § 121.004(b).

151.    Defendant's Surcharge for Non-Dairy Alternatives discriminates against people with disabilities and, through their actions described herein, Peet's has, directly denied to Plaintiff Wilkinson and the Texas Subclass Members, because of her disabilities, the full and equal enjoyment of its goods, services, privileges, advantages and accommodations.

152.    Plaintiff Wilkinson and the Texas Subclass Members have been damaged and will continue to be damaged by this discrimination as more fully set forth herein.

**COUNT V**
**UNJUST ENRICHMENT/RESTITUTION**

153.  The allegations contained in paragraphs 1-94 of the First Amended Complaint are incorporated by reference as if fully set out herein. The named Plaintiffs assert this count on their own behalf and on behalf of the National class, as defined above.

154.  Plaintiffs conferred a benefit to Defendant by allowing them to collect a surcharge in

FIRST AMENDED CLASS ACTION COMPLAINT

1  exchange for providing Plaintiffs with non-dairy alternatives such as lactose-free milk.

2  155.  Defendant enriched itself at the expense of Plaintiffs and the putative class members

3  by its illegal levying of the Surcharge for Non-Dairy Alternatives.

4  156.  Plaintiffs and putative class members continue to suffer injuries as a result of the

5  Defendant's illegal and discriminatory behavior. If the Defendant does not compensate the

6  Plaintiffs, it would be unjustly enriched as a result of its unlawful acts or practices.

7  157.  It is an equitable principle that no one should be allowed to profit from his own

8  wrongdoing, therefore it would be inequitable for the Defendant to retain said benefit and reap unjust

9  enrichment.

10  158.  Since the Defendant unjustly enriched itself at the expense of the Plaintiffs and

11  putative class members, Plaintiffs request the disgorgement of these illegally obtained monies.

12  159.  Due to Defendant's conduct, Plaintiffs and the putative class members are entitled to

13  damages according to proof, but in no event less than $5,000,000.00.

14  **PRAYER FOR RELIEF**

15  WHEREFORE, Plaintiffs, VERONICA MUNOZ, JENNIFER WILKINSON, KATHERINE

16  HETHERTON, and MICHELLE IRWIN respectfully request that this Court enter judgment in their

17  favor and in favor of those similarly situated, as follows:

18  1.  Certifying and maintaining this action as a class action, with the named Plaintiffs as

19  designated class representative and with their counsel appointed as class counsel;

20  2.  A declaration that Defendant is in violation of each of the Counts set forth above;

21  3.  Award Plaintiffs and those similarly situated statutory, compensatory, and treble

22  damages;

23  4.  Award Plaintiffs and those similarly situated liquidated damages;

24  5.  Order the disgorgement of illegally obtained monies;

25  6.  Award each named Plaintiff a service award;

26  7.  Award attorneys' fees and costs; and

27  8.  Grant such further relief as the Court deems just and proper.

28

- 21 -

FIRST AMENDED CLASS ACTION COMPLAINT

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial of the claims asserted in this First Amended Class Action Complaint.

Dated: June 25, 2024

Respectfully submitted,

/s/ William M. Aron

William M. Aron (SBN No. 234408)
ARON LAW FIRM
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Telephone: (805) 618-1768
Email: bill@aronlawfirm.com

Bogdan Enica (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
1200 N. Federal Highway, Suite 375
Boca Raton, FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

Keith L. Gibson (*Pro Hac Vice*)
KEITH GIBSON LAW, P.C.
490 Pennsylvania Avenue Suite 1
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

*Counsel for Plaintiffs and the Putative Class*

- 22 -

FIRST AMENDED CLASS ACTION COMPLAINT