UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA MUNOZ, et al., | Case No. 24-cv-01764-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| PEETS COFFEE, INC., | Re: ECF No. 29 |
| Defendant. | |

Plaintiffs brought this suit against Defendant Peet's Coffee, Inc. ("Peet's") alleging violations of the Americans with Disabilities Act ("ADA"), California's Unruh Civil Rights Act ("Unruh Act"), Massachusetts's Anti-Discrimination Law, and Texas's Human Resources Code, and making a claim for unjust enrichment. Before the Court is Peet's motion to dismiss the first amended complaint. ECF No. 29. The Court will grant the motion.

## I.  BACKGROUND

Plaintiffs Veronica Munoz, Jennifer Wilkinson, Katherine Hetherton, and Michelle Irwin suffer from lactose intolerance and milk allergies. ECF No. 1 ¶ 2. They are required for medical reasons to avoid consuming drinks that contain milk. *Id.* "Plaintiffs ordered coffee-based, tea-based, and other drinks at Peet's retail coffee shops in their respective states of residence from at least 2020 to the present." *Id.* When they visited Peet's coffee shops, they ordered drinks that included milk as part of the regular menu item, but requested to substitute milk for Non-Dairy Alternatives—specifically, oat milk, soy milk or almond milk. *Id.* ¶ 3. Peet's charged them a "surcharge" of at least $0.80 surcharge for the substitution, Peet's for the substitution, depending on the date and the location of the store. *Id.*

Plaintiffs now bring this putative class action on their own behalf and on behalf of a

putative class of all consumers in California, Texas, Massachusetts, and in the United States who, within four years of the filing of this suit, have paid a "surcharge" for a beverage from Peet's that contained non-dairy alternatives, including plant-based or lactose-free milk.  ECF No. 24. ¶ 1 ("FAC").  Specifically, Plaintiffs allege that Peet's discriminates against individuals with lactose intolerance or milk allergies by charging more for beverages made with non-dairy alternatives than those made with dairy milk, despite no additional labor or ingredient cost required.

## II.    JURISDICTION

The Court has jurisdiction over this case as a class action in which a member of the class of plaintiffs is a citizen of a state different from the defendant and the matter in controversy exceeds the sum of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d).

The Court also has jurisdiction over this action under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

United States District Court
Northern District of California

IV.    **DISCUSSION**

    A.    **ADA Title III Claims**

Plaintiffs allege that Peet's violates the ADA because it fails "to make modifications that are necessary to afford goods and services to persons with lactose intolerance but instead imposes a surcharge on this group of persons . . . ."  FAC ¶ 109.  As Plaintiffs recognize, the core of their allegations is not about whether Peet's is required to provide non-dairy alternatives; Peet's already provides them at its stores.  *See* ECF No. 32 at 6.  Instead, their allegations focus solely on whether Peet's violates the ADA by charging increased prices for drinks made with those non-dairy alternatives.

A plaintiff asserting a claim of disability discrimination under the ADA "must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability."  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1212 (9th Cir. 2020) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  Plaintiffs allege that individuals with lactose intolerance and milk allergies are disabled within the meaning of the ADA and that Peet's is a private entity that owns and operates stores that are places of public accommodation.  *See* FAC ¶¶ 55–64, 97, 106.  Defendant has not disputed these contentions, so the Court will address only the last element—whether Plaintiffs were denied public accommodations by Peet's because of their disability.

Plaintiffs advance two separate ADA-based theories: (1) an imposition of a surcharge on a group of individuals with disabilities, in violation of the ADA's implementing regulations under 28 C.F.R. § 36.301, and (2) a failure to make reasonable modifications under 42 U.S.C. § 12182(b)(2)(A)(ii).  The Court finds that Plaintiffs have not adequately pleaded an ADA violation under either of these theories.[1]

        1.    **Illegal Surcharge**

In *Dare v. California*, the Ninth Circuit laid out a two-part test for evaluating whether a fee

---

[1] Because the Court has resolved Peet's motion to dismiss on the grounds below, it need not reach whether and in what ways courts can regulate the pricing of goods under the ADA.

United States District Court
Northern District of California

was a surcharge that violated Title II of the ADA.  191 F.3d 1167 (9th Cir. 1999).  Though *Dare* dealt with Title II, the language of the surcharge provision under Title II is nearly identical to that under Title III.  *Compare* 28 C.F.R. § 36.301(c) (providing that "[a] public accommodation may not impose a surcharge on a particular individual with a disability or group of individuals with disabilities to cover the costs of measures . . . that are required to provide that individual or group with the nondiscriminatory treatment required by the" ADA) *with* 28 C.F.R. § 35.130(f) (providing that a "public entity may not place a surcharge on a particular individual with a disability . . . to cover the costs of measures . . . that are required to provide that individual with the nondiscriminatory treatment required by the" ADA).  The Court thus finds the *Dare* framework helpful in assessing whether Peet's pricing model constitutes a surcharge here.  *See Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 546–47 (W.D. Pa. 2013) (applying the *Dare* two-factor inquiry to reject a claim that Macy's stores imposed a "surcharge" on women's plus-sized clothing items).

Applying *Dare*, the Court first considers whether the policy for which an entity levies the fee is "required to provide that individual or group nondiscriminatory treatment as mandated by the ADA." *Dare*, 191 F.3d at 1171 (internal quotation marks and citation omitted).  This first factor closely tracks the language of the surcharge provision in the regulations implementing the ADA.  *See* 28 C.F.R. § 36.301(c).  Second, the Court considers whether the fee is a surcharge at all—i.e., whether it is a charge that nondisabled people would not incur.  "If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge." *Dare*, 191 F.3d at 1171.

Under the first *Dare* factor, the policy for which Peet's charges the fee—the provision of non-dairy alternatives for its blended coffees—is not required to provide individuals with lactose intolerance or milk allergies nondiscriminatory treatment as mandated by the ADA.  Indeed, Plaintiffs seem to concede that they "are not claiming that Peet's is required to offer non-dairy alternatives" in the first place.  ECF No. 32 at 21.  Plaintiffs also provide neither argument nor citation to authority suggesting that Peet's policy of providing non-dairy alternatives is designed to fulfill an ADA mandate.  In fact, significant case law suggests that there is no requirement under

4

the ADA for Peet's to provide special goods as part of its menu offering or inventory. *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) (explaining that the language under Title III of the ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided. Thus, a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print."); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 188 (5th Cir. 2000) (finding that a place of public accommodation "need not modify or alter the goods and services that it offers in order to avoid violating Title III"); *Anderson*, 943 F. Supp. 2d at 546–47 (finding that Macy's was "not required to carry plus-sized clothing at all"). Because 28 C.F.R. § 35.301(c) "only forbids surcharges for 'required' measures," the fact that Peet's is not required at all to offer drinks made with non-dairy alternatives means that "the inquiry ends" here. *See Dare*, 191 F.3d at 1171.

But Peet's pricing model also does not constitute a surcharge under the second *Dare* factor because Plaintiffs have not shown that only disabled customers would incur the extra cost of paying for drinks made with non-dairy alternatives. Plaintiffs do not allege that only those with lactose intolerance or milk allergies are charged the increased pricing for drinks made with non-dairy alternatives. Indeed, they do not dispute that the prices Peet's charges for drinks with non-dairy alternatives "appl[y] to all customers who order [those drinks], whether lactose intolerant or not." ECF No. 29 at 20.

Despite the facial neutrality of Peet's non-dairy alternative pricing, Plaintiffs rely heavily on *Phillips v. P.F. Chang's China Bistro, Inc.* to argue that Peet's pricing still constitutes a surcharge. No. 5:15-CV-00344-RMW, 2015 WL 7429497 (N.D. Cal. Nov. 23, 2015). The Court finds *Phillips*—which did not apply the *Dare* test—distinguishable. In *Phillips*, the plaintiff "allege[d] that P.F. Chang's discriminated against her and other guests with celiac disease or a gluten allergy or intolerance by charging $1.00 more for some gluten-free menu items than for comparable non-gluten-free menu items." *Id.* at *1. The court in *Phillips* relied on the plaintiff's allegation that P.F. Chang's "created an entirely separate—and higher priced—gluten-free menu targeted to persons with celiac disease" and that it "direct[ed] customers with celiac disease to the

5

gluten-free menu rather than offering to make modifications for celiac customers the way Defendant does for other customers." *Id.* at *4. For example, the plaintiff there alleged that there was a one-dollar additional cost per item for most items on the gluten-free menu, each of which had "an analogue on the regular menu with the exact same name, suggesting that they [were] essentially the same item as the regular menu item. This surcharge for the gluten-free items occur[ed] *even where the items at issue may naturally be gluten free such as vegetable dishes*." *Id.*, ECF No. 25 ¶ 18 (emphasis added).

Unlike in *Phillips*, Plaintiffs here do not allege that Peet's has an entirely separate and more expensive "dairy-free" menu that contains identical items as those on its regular menu, including those items that are naturally dairy-free, such as black coffee or plain tea. Plaintiffs have similarly not alleged that Peet's directs customers with lactose intolerance or milk allergies to the more expensive menu items that include non-dairy alternatives. Indeed, only one named Plaintiff alleged that she even made it known to Peet's that she had a medical condition that affected her ability to consume milk. *See* FAC ¶ 51. Peet's thus does not impose a surcharge on individuals with lactose intolerance or milk allergies, but rather on anyone who orders a drink made with a non-dairy alternative, which can be ordered for reasons unrelated to having a medical condition—including personal preference. *See Anderson*, 943 F. Supp. 2d at 546–47.

### 2.    Reasonable Modification

Plaintiffs next argue that Peet's violates the ADA by failing to make reasonable modifications to its policies to accommodate individuals with lactose intolerance or milk allergies. Discrimination under the ADA includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). To establish a prima facie case alleging a violation of that statutory provision, a plaintiff must sufficiently allege that the defendant failed to make a requested modification that was both (1) "reasonable" and (2) "necessary" to accommodate the plaintiff's disability. *See PGA Tour v. Martin*, 532 U.S. 661, 683 n.38 (2001); *see also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017). A requested modification is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "necessary" when failure to provide the accommodation would deprive a disabled customer from

2    having a "like experience" as non-disabled customers. *Baughman v. Walt Disney World Co.*, 685

3    F.3d 1131, 1135 (9th Cir. 2012).  And whether an accommodation is "reasonable" is a "fact-

4    specific, case-by-case inquiry that considers, among other factors, the effectiveness of the

5    modification in light of the nature of the disability in question and the cost of the organization that

6    would implement it."  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1083 (9th Cir. 2004)

7    (internal citation and quotation omitted).

8         Furthermore, several courts within the Ninth Circuit have interpreted *Karczweski* as

9    requiring that a plaintiff actually *requested* a reasonable modification and applied this rule to

10   dismiss claims where the plaintiff did not request any modification prior to filing a lawsuit.  *See*

11   *Namisnak v. Uber Techs., Inc.*, No. 17-CV-06124-RS, 2018 WL 7200717, at *3 (N.D. Cal. Oct. 3,

12   2018) (citing cases); *Galvez v. Auto. Club of S. California*, No. 16-CV-0887-DOC (KESx), 2017

13   WL 4586934, at *4 (C.D. Cal. May 5, 2017), *aff'd*, 745 F. App'x 39 (9th Cir. 2018) (explaining

14   that "[d]istrict courts in the Ninth Circuit have interpreted the 'requested modification' rule

15   narrowly" to dismiss claims where the plaintiff did not allege having requested any

16   modifications).  While no "magic words" are required, a plaintiff must request an accommodation

17   before claiming that a defendant "has refused to modify its policy, practices or procedures in

18   violation" of the ADA.  *Namisnak*, 2018 WL 7200717, at *3.

19        Here, Plaintiffs do not allege that they ever requested Peet's to make a reasonable

20   modification—in this case asking Peet's to charge the same price for a drink made with non-dairy

21   alternatives as it does for that drink made with dairy milk to accommodate Plaintiffs' lactose

22   intolerance or milk allergies.  Defendant correctly points out that "[o]nly one Named Plaintiff

23   (Hetherton) alleged that she disclosed to a Peet's server that 'she cannot consume milk due to her

24   medical condition' (ECF 24 ¶ 51), [and] no other Named Plaintiff similarly alleges she informed

25   Peet's Coffee she is lactose intolerant or has a milk allergy."  ECF No. 29 at 22.  Plaintiffs counter

26   that the ADA does not require a person to "engage in a futile gesture if such person has actual

27   notice that a person or organization covered by this subchapter does not intend to comply with its

28   provisions."  ECF No. 32 at 22–23 (quoting 42 U.S.C.A. §12188(A)(1)).  But Plaintiffs have not

1    alleged that any of the Plaintiffs had "actual notice" that Peet's did not intend to comply with the

2    ADA. The Court thus finds that Plaintiffs' reasonable modification claim fails for failure actually

3    to request any modification. *See Razavi v. Coti*, No. 17-CV-04341-BLF, 2018 WL 2867575, at *2

4    (N.D. Cal. June 11, 2018) (dismissing a reasonable modification claim because the plaintiff did

5    not allege that "she actually *requested but was refused* a reasonable modification").

6        Plaintiffs' reasonable modification claim fails for the additional reason that they have not

7    adequately alleged that the modification sought is "necessary"—meaning failure to provide the

8    accommodation would deprive a lactose intolerant customer from having a "like experience" as

9    non-lactose intolerant customers. As Defendants argue, Peet's provides Plaintiffs with the same

10   physical access to its coffee shops as non-disabled customers and allows Plaintiffs an equal

11   opportunity to order the same drinks made with non-dairy alternatives at the same prices charged

12   to non-disabled customers. *See* ECF No. 38 at 3–4. A modification lowering the price of drinks

13   made with non-dairy alternatives—below what would be charged to non-lactose intolerant

14   customers for that same drink—for lactose intolerant customers is thus not necessary to provide a

15   "like experience" to the two groups of customers.

16       The ADA-related provisions cited by Plaintiffs do not warrant finding otherwise. *See* ECF

17   No. 39 at 5. As discussed above, Plaintiffs have not adequately made a claim of an illegal

18   surcharge. And Plaintiffs misstate 28 C.F.R. § 36.307(b) to argue that "if an establishment already

19   makes alterations or modifications, or takes special orders for its customers, it must do so for the

20   disabled customer requests as well." ECF No. 32 at 13. That subsection provides that a "public

21   accommodation shall order accessible or special goods at the request of an individual with

22   disabilities, if, in the normal course of its operation, it makes special orders on requests for

23   unstocked goods, and if the accessible or special goods can be obtained from a supplier with who

24   the public accommodation customarily does business." 28 C.F.R. § 36.307(b). But there is no

25   dispute that Peet's already stocks "special goods" (non-dairy alternatives) here, so the cited

26   subsection is inapplicable. The plain language of 28 C.F.R. § 36.307(b) does not require Peet's to

27   *sell* "special goods" at the request of an individual with disabilities at the same price as those

28   goods' ostensibly non-accessible counterpart if Peet's does so for any other "special goods"—and

8

1    Plaintiffs have not cited any other authority requiring Peet's to do so.

2      Accordingly, Plaintiffs have not adequately stated an ADA-violation based on a reasonable

3    modification claim.

4      **B.**  **California Unruh Act Claim**

5      California residents Munoz and Irwin also bring an Unruh Act claim.  Plaintiffs argue that

6    Peet's "practice of surcharging Non-Dairy Alternatives purchased by consumers who are lactose

7    intolerant constitutes price discrimination in violation of the Unruh Act."  FAC ¶ 24.   Plaintiffs

8    advance two theories for their Unruh Civil Rights Act claim—one predicated upon a violation of

9    the ADA and the other on a theory of intentional discrimination.  Intentional discrimination is

10   required to state an independent violation of the Unruh Act but not for a violation of the Unruh

11   Act that is based upon a violation of the ADA.  *Phillips*, 2015 WL 7429497, at *6 (citing

12   *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (2009)).  Because the Court finds that Plaintiffs

13   have not stated an ADA claim, the Court analyzes only whether Plaintiffs have stated a case for

14   intentional discrimination to support their Unruh Act claim.

15     To make a prima facie case of intentional discrimination under the Unruh Act, Plaintiffs

16   must allege "willful, affirmative misconduct with the specific intent to accomplish discrimination

17   on the basis of [a protected trait]."  *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1036,

18   (2022), *review denied* (Nov. 9, 2022) (internal quotation marks and citation omitted).  While

19   evidence of disparate impact may be probative of intentional discrimination under the Unruh Act,

20   "it cannot alone establish such intent."  *Id.*

21     As discussed above, Plaintiffs have not adequately alleged that Peet's has singled out those

22   with lactose intolerance or milk allergies for its non-dairy alternative milk pricing.  Indeed, only

23   Hetherton even alleged that she ever notified a Peet's employee that she had "a medical condition"

24   before ordering her drink with non-dairy alternative milk.  Given the variety of reasons unrelated

25   to any medical disability for which one may order non-dairy alternative milk, Plaintiff has failed to

26   make the necessary showing that Defendant acted with specific intent to discriminate against those

27   with lactose intolerance or milk allergies in charging a higher price for such drinks.  And

28   Plaintiff's bare assertion that Peet's "created a surcharge targeted to persons with lactose

*United States District Court*
*Northern District of California*

1    intolerance" does not satisfy the showing required to plead intentional discrimination in the face of

2    facially neutral pricing.  FAC ¶ 117; *see Greater Los Angeles Agency on Deafness, Inc. v. Cable*

3    *News Network, Inc.*, 742 F.3d 414, 426 (9th Cir. 2014) (finding that a bare assertion that "CNN

4    intentionally excluded deaf and hard of hearing individuals from" accessing" its website "fail to

5    establish even a minimal showing of intentional discrimination and are belied by the record").

6             **C.    Massachusetts Public Accommodation Law Claim**

7             Hetherton alleges on behalf of the putative Massachusetts subclass that Peet's pricing

8    violates Massachusetts Public Accommodation Law, Chapter 272, § 98.  FAC at 19.  Courts

9    generally apply the Massachusetts provision coextensively with the ADA.[2]  Accordingly, the

10   Court dismisses Plaintiffs' claim under the Massachusetts Public Accommodation Law, Chapter

11   272, § 98 for the same reasons as those discussed above.

12            **D.    Texas Human Resource Code Claim**

13            Wilkinson alleges on behalf of the putative Texas subclass that Peet's non-dairy alternative

14   pricing violates Texas Human Resource Code § 121.003(a).  Subsection 121.003(a) provides that

15   "[p]ersons with disabilities have the same right as persons without disabilities to the full use and

16   enjoyment of any public facility in the state."  As with the California and Massachusetts statutes,

17   the "ADA's analogous provisions are informative as to the standards by which a facility may

18   lawfully discriminate on the basis of a disability" under Texas law.  *Silguero v. CSL Plasma, Inc.*,

19   579 S.W.3d 53, 73 (Tex. 2019).  The Court thus finds that Plaintiffs' claim under Texas Human

20   Resource Code § 121.003(a) fails for the same reasons their ADA claims fail.

21            **E.    Unjust Enrichment Claim**

22            Finally, Plaintiffs assert an unjust enrichment or restitution claim "on behalf of the

23

24   [2] *See McNelley v. 7-Eleven, Inc.*, No. 22-CV-10046-ADB, 2024 WL 1287205, at *4 (D. Mass.
     Mar. 26, 2024) ("There is relatively little caselaw interpreting Chapter 272, § 98. As such, courts

25   look to caselaw interpreting the [ADA]."); *see also Nathanson v. MCAD*, No. 199901657, 2003
     WL 22480688, at *4 (Mass. Sup. Ct. Sept. 16, 2003) ("The [ADA] is a statute with objectives

26   similar to those of [Mass. Gen. Laws ch.] 272, § 98 . . . .  It is thus appropriate to look to the ADA,
     and decisions interpreting it, for guidance when interpreting the provisions of the Massachusetts

27   Public Accommodation statute." (citing *Lesley v. Hee Man Chie*, 250 F.3d 47, 58 n.17 (1st Cir.
     2001))); *Lesley v. Hee Man Chie*, 81 F. Supp. 2d 217, 226 (D. Mass. 2000), *aff'd*, 250 F.3d 47

28   ("Interpretation of Massachusetts Public Accomodation Statute proceeds 'hand in hand' with the
     interpretation of the Americans with Disabilities Act . . . ." (internal citation omitted).

1   [putative] National class."  FAC ¶ 153.  As a preliminary matter, Plaintiffs do not specify in their

2   Complaint which state's laws support their claim.  *See In re Static Random Access Memory*

3   *(SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (dismissing unjust enrichment

4   claim because "until Plaintiffs indicate which States' laws support their claim, the Court cannot

5   assess whether the claim has been adequately plead"); *Gram v. Intelligender, LLC*, No. CV-10-

6   4210-ABC (VBKx), 2010 WL 11601035, at *4 (C.D. Cal. Oct. 8, 2010) (same).  For this reason

7   alone, Plaintiffs have not adequately pleaded an unjust enrichment claim.

8       But even applying the standards for unjust enrichment under the laws of California, Texas,

9   and Massachusetts (the states Plaintiffs assert apply in their briefing), Plaintiffs have failed to state

10  a claim under any of those states' laws.  Under the law of all three states, unjust enrichment only

11  applies when it would be unjust for that party—usually engaged in wrongful conduct—to retain a

12  benefit it wrongfully received.  *See County of San Bernardino v. Walsh,* 158 Cal. App. 4th 533,

13  542–43 (2007) (explaining that unjust enrichment focuses "on the wrongdoer's enrichment"); *Eun*

14  *Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013) (stating that unjust enrichment

15  occurs when a person has received a benefit which "it would be unconscionable to retain"); *Sacks*

16  *v. Dissinger*, 178 N.E.3d 388, 397 (Mass. 2021) (defining unjust enrichment under Massachusetts

17  law as the "retention of money or property of another against the fundamental principles of justice

18  or equity and good conscience") (quoting *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. 2005)).

19      Here, Plaintiffs' unjust enrichment claim is based on the same allegations and theory as

20  their ADA claim—that Peet's enriched itself at the expense of Plaintiffs and the putative class

21  members by its illegal levying of the Surcharge for Non-Dairy Alternatives."  ECF No. 32 at 28.

22  Because the Court has found that Peet's pricing policy does not constitute a discriminatory

23  "surcharge" under the ADA, there is no "wrongful" conduct such that it would be unjust for Peet's

24  to retain the benefit conferred by Plaintiffs in purchasing their drinks.

25                              **CONCLUSION**

26      For the foregoing reasons, the Court grants Peet's motion to dismiss.  Plaintiffs' claims are

27  dismissed with leave to amend.  Plaintiffs may file an amended complaint within the next 21 days

28  solely to cure the deficiencies identified in this order.  If no amended complaint is filed within 21

United States District Court
Northern District of California

days, the Court will direct the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated:  November 5, 2024



JON S. TIGAR
United States District Judge