1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    VERONICA MUNOZ, et al.,                    Case No. 24-cv-01764-JST
                  Plaintiffs,
8
                                                **ORDER GRANTING MOTION TO
9         v.                                    DISMISS**
10   PEETS COFFEE, INC.,                         Re: ECF No. 48
                  Defendant.
11
12
13        Before the Court is Defendant Peet's Coffee, Inc.'s ("Peet's") motion to dismiss the second

14   amended complaint.  ECF No. 48.  The Court will grant the motion.

15   **I.    BACKGROUND**

16        Because the facts are well-known to the parties and the Court has summarized Plaintiffs'

17   allegations in detail in its prior order, ECF No. 41, the Court will not repeat them here.  In sum,

18   Plaintiffs Veronica Munoz, Jennifer Wilkinson, Katherine Hetherton, and Michelle Irwin bring

19   this action against Peet's for allegedly discriminating against them on the basis of their

20   disability—being lactose intolerant and having milk allergies—by charging a "surcharge" to

21   substitute the dairy milk used in their drinks with non-dairy alternatives.

22        Plaintiffs allege violations of Title III of the Americans with Disabilities Act ("ADA"),

23   California's Unruh Civil Rights Act ("Unruh Act"), Massachusetts's Anti-Discrimination Law,

24   and Texas's Human Resources Code, and bring claims for unjust enrichment under California,

25   Massachusetts, and Texas state law.  ECF No. 44 at 16–28.

26   **II.   JURISDICTION**

27        The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332(d).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  ### III.    LEGAL STANDARD

2          A complaint must contain "a short and plain statement of the claim showing that the

3  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is

4  appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

5  a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

6  Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a

7  plaintiff "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.*

8  *Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain

9  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

10  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A

11  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

12  the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court

13  must "accept all factual allegations in the complaint as true and construe the pleadings in the light

14  most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

15  However, the Court is not "required to accept as true allegations that are merely conclusory,

16  unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536

17  F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

18  ### IV.    JUDICIAL NOTICE

19          "As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling

20  on a Rule 12(b)(6) motion.'"  *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.

21  2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  "When 'matters

22  outside the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts

23  into a motion for summary judgment under Rule 56," unless those matters satisfy the

24  "incorporation-by-reference doctrine" or the standard for "judicial notice under Federal Rule of

25  Evidence 201."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting

26  Fed. R. Civ. P. 12(d)).  The Ninth Circuit has expressed concern with the practice of "exploiting

27  these procedures improperly to defeat what would otherwise constitute adequately stated claims at

28  the pleading stage."  *Id.*  The Ninth Circuit also cautioned that "[i]f defendants are permitted to

2

1   present their own version of the facts at the pleading stage—and district courts accept those facts

2   as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to

3   demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999.

4       "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not

5   subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and

6   readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting

7   Fed. R. Evid. 201(b)).

8       Peet's requests that the Court take judicial notice of the following documents: nine

9   screenshots from the Peet's website, including screenshots of its online menu and order pages;

10  screenshots from Tim Hortons's website, including of pages generated after ordering at a Tim

11  Hortons store in Houston, Texas; and Defendant P.F. Chang's Request for Judicial Notice in

12  Support of Defendant's Motion to Dismiss Plaintiff's Complaint filed in *Phillips v. P.F. Chang's*

13  *China Bistro, Inc.*, Case No. 5:15-cv-00344-RMW (N.D. Cal. February 27, 2015). *See* ECF No.

14  48-1 at 4–5.

15      As this Court has previously explained, "this Court rejects the notion that a document is

16  judicially noticeable simply because it appears on a publicly available website, regardless of who

17  maintains the website or the purpose of the document." *Rollins v. Dignity Health*, 338 F. Supp. 3d

18  1025, 1032 (N.D. Cal. 2018). Unlike government websites, the websites of private parties "are not

19  inherently reliable," and that "is particularly so when a party seeks to introduce documents it

20  created and posted on its own website, as [Peet's] does here. When a non-governmental entity to

21  seek judicial notice of its paper records, the request is properly rejected because such documents

22  are subject to reasonable dispute." *Id.* at 1032–33 (citing *Ladore v. Sony Comput. Entm't Am.,*

23  *LLC*, 75 F.Supp.3d 1065, 1074 (N.D. Cal. 2014)).

24      Peet's argues that this Court "may take judicial notice of Peet's Coffee's website and the

25  content of these menu pages from the Peet's Coffee Website and Tim Hortons Website because

26  the SAC makes multiple references to" the contents of both websites in support of its allegations.

27  ECF No. 48-1 at 3. But the portions of the second amended complaint do not support Peet's

28  argument. Rather, while Plaintiffs allege that Peet's "created a separate and higher priced dairy-

United States District Court
Northern District of California

3

free menu targeted to persons with lactose intolerance or milk allergies," they do not allege that this was Peet's or Tim Hortons's *online* menu. *See, e.g.*, ECF No. 44 ¶ 139. Indeed, Plaintiffs' briefing clarifies that they are referring to the physical menu board at various Peet's locations. *See* ECF No. 52 at 5. As Peet's "is not explaining or arguing the allegations in Plaintiffs' [SAC] – it is trying to factually rebut them . . . , to grant the request for judicial notice would improperly convert this Rule 12(b)(6) motion into a motion for summary judgment under Rule 56." *Rollins*, 338 F. Supp. 3d at 1031 (citing *Khoja*, 899 F.3d at 998–99). Accordingly, the Court denies Peet's request for judicial notice of any of the documents relating to its or Tim Hortons's website.

As to Peet's request for judicial notice of the document filed in *Phillips v. P.F. Chang's China Bistro, Inc.*, Case No. 5:15-cv-00344-RMW, the Court takes judicial notice of the existence of the document, but not the truth of the matters asserted in the document. *See Salas v. Gomez*, No. 14-CV-01676-JST, 2016 WL 3971206, at *5 (N.D. Cal. July 25, 2016); *see also In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (explaining that the court "may take judicial notice of the existence of unrelated court documents . . . it will not take judicial notice of such documents for the truth of the matter asserted therein").

## V.    DISCUSSION

### A.    ADA Title III Claims

Plaintiffs allege that Peet's violates the ADA because "it fails to make modifications to persons with lactose intolerance and milk allergies but instead imposes a surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material difference between the costs of regular milk and Non-Dairy Alternatives." ECF No. 44 ¶ 138.

Plaintiffs advance two separate ADA-based theories: (1) the imposition of a surcharge on a group of individuals with disabilities violates the ADA's implementing regulations under 28 C.F.R. § 36.301, and (2) Peets fails to make reasonable modifications under 42 U.S.C. § 12182(b)(2)(A)(ii).

#### 1.    Illegal Surcharge

The Court previously found that Plaintiffs failed to adequately allege an ADA violation under their "illegal surcharge" theory because Peet's pricing model does not constitute a surcharge

United States District Court
Northern District of California

United States District Court
Northern District of California

1   under the two-part test laid out in *Dare v. California*.  *See* ECF No. 41 at 3–5 (citing *Dare v.*

2   *California*, 191 F.3d 1167 (9th Cir. 1999)).  The Court further distinguished the facts of this case

3   from those in *Phillips v. P.F. Chang's China Bistro, Inc.*, No. 5:15-CV-00344-RMW, 2015 WL

4   7429497 (N.D. Cal. Nov. 23, 2015), which Plaintiffs relied upon heavily and which did not apply

5   the *Dare* test.  ECF No. 41 at 5–6.

6          Plaintiffs contend that they have sufficiently addressed the issues previously identified by

7   the Court by now alleging that just like in *Phillips*, Peet's servers directed Plaintiffs to a "separate,

8   'dairy-free' menu for persons who were lactose intolerant," specifically referring to "menu boards

9   behind the registers or counters have a separate section for Non-Dairy Alternatives."  ECF No. 52

10  at 5.  The Court finds Plaintiffs' argument unhelpful.

11         First, as with Plaintiffs' first amended complaint, the second amended complaint fails to

12  state a claim for an illegal surcharge under the *Dare* test.  Under *Dare*, the Court considers (1)

13  whether the policy for which an entity levies the fee is "required to provide that individual or

14  group nondiscriminatory treatment as mandated by the ADA" and (2) whether the fee is a

15  surcharge at all—i.e., whether it is a charge that nondisabled people would not incur. "*Dare*, 191

16  F.3d at 1171.  As the Court previously explained, Plaintiffs have not explained how Peet's pricing

17  policy meets either *Dare* factor to constitute a surcharge.  *See* ECF No. 41 at 4–5.

18         Second, although Plaintiffs continue to base their argument entirely on *Phillips*—which is

19  not binding on this Court—Plaintiffs' new factual allegations are still distinguishable.  In *Phillips*,

20  the plaintiff alleged that P.F. Chang's had an entirely separate gluten-free menu that included

21  items that cost more than their exact analogue on the regular menu, even for items that were

22  already naturally gluten-free.  *See Phillips*, 2015 WL 7429497, at *4; *id.*, ECF No. 25 ¶ 18. Here,

23  Plaintiffs have primarily amended their complaint to allege that Peet's servers also directed

24  Plaintiffs to a "separate, 'dairy-free' menu for persons who were lactose intolerant.  *See, e.g.*, ECF

25  No. 44 ¶ 139.  But Plaintiffs' briefing reveals that those "separate, dairy-free menus" refer to the

26

27

28

"Customize" sections of the menu boards at certain Peet's locations.



*See* ECF No. 52 at 5.

These menu sections list the customization options available and the additional cost of those customizations, including making drinks with not just non-dairy alternatives but also with whipped cream, syrups, and sauces. *See id.* The menu sections thus neither solely target people with lactose intolerance nor charge higher prices for the exact same drink from some separate menu for people without lactose intolerance, as was the case alleged in *Phillips*.

Accordingly, the Court finds that Plaintiffs fail to plausible allege that Peet's pricing policy constitutes an illegal surcharge under the ADA.

### 2.    Reasonable Modification

The Court previously found that Plaintiffs failed to adequately allege that Peet's violates the ADA by failing to make reasonable modifications regarding pricing for drinks made with non-dairy alternatives because Plaintiffs did not allege actually requesting a reasonable modification or show that the modification sought was "necessary." *See* ECF No. 41 at 6–9. A requested modification is "necessary" when failure to provide the accommodation would deprive a disabled customer from having a "like experience" as non-disabled customers. *Baughman v. Walt Disney*

United States District Court
Northern District of California

1    *World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

2    On the first issue, Plaintiffs have now sufficiently alleged that they requested that Peet's

3    waive the additional cost of the non-dairy alternatives to accommodate their alleged disabilities.

4    *See* ECF No. 44 ¶¶ 30–33, 41–44, 52–55, 63–66.

5    As to whether the requested modification is "necessary," however, Plaintiffs continue to

6    fall short.  Plaintiffs have amended their complaint essentially to repeat what they argued in their

7    previous briefing—that consumers go to Peet's to "order[] its specialty crafted coffee drinks, most

8    of which include milk products," and so "in order to fully enjoy this experience," those with

9    lactose intolerance or milk allergies "should be able to substitute the dairy milk in these drinks for

10   Non-Dairy Alternatives at the same cost."  *Compare* ECF No. 44 ¶¶ 93–94 *with* ECF No. 39 at 4.

11   But the Court already rejected this argument because Plaintiffs do not provide any authority that

12   Peet's is required under the ADA to sell goods that accommodate a disability at the exact same

13   price as its "ordinary" counterpart to provide a "like experience."  *See* ECF No. 41 at 8–9.

14   Accordingly, Plaintiffs have not adequately stated a claim for failure to make reasonable

15   modifications under the ADA.

16   **B.    California Unruh Act Claim**

17   California residents Munoz and Irwin bring an Unruh Act claim, arguing that Peet's

18   "practice of surcharging Non-Dairy Alternatives purchased by consumers who are lactose

19   intolerant constitutes price discrimination in violation of the Unruh Act."  ECF No. 44 ¶ 148.

20   Plaintiffs advance two theories for their Unruh Civil Rights Act claim—one predicated upon a

21   violation of the ADA and the other on a theory of intentional discrimination.  Because the Court

22   finds that Plaintiffs have not stated an ADA claim, the Court analyzes only whether Munoz and

23   Irwin have stated a case for intentional discrimination to support their Unruh Act claim.

24   To make a prima facie case of intentional discrimination under the Unruh Act, Plaintiffs

25   must allege "willful, affirmative misconduct with the specific intent to accomplish discrimination

26   on the basis of [a protected trait]." *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1036,

27   (2022), *review denied* (Nov. 9, 2022) (internal quotation marks and citation omitted). While

28   evidence of disparate impact may be probative of intentional discrimination under the Unruh Act,

1   "it cannot alone establish such intent." *Id.*

2        As discussed above and in the Court's previous order, Plaintiffs have not adequately

3   alleged that Peet's has singled out those with lactose intolerance or milk allergies for its non-dairy

4   alternative milk pricing.  Peet's pricing policy is facially neutral and applies equally to customers

5   who are not lactose intolerant but prefer non-dairy alternatives in their drinks.  And the "separate

6   menu" (the "Customize" section of the menu) that Plaintiffs now point to does not plausibly

7   reflect any specific intent to target individuals with lactose intolerance or milk allergies.  *See*

8   *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 426

9   (9th Cir. 2014) (finding that a bare assertion that "CNN intentionally excluded deaf and hard of

10  hearing individuals from" accessing" its website "fail to establish even a minimal showing of

11  intentional discrimination and are belied by the record").

12       **C.    Discrimination Claims under Massachusetts and Texas State Law**

13       Hetherton alleges a violation of Massachusetts Public Accommodation Law, Chapter 272,

14  § 98, and Wilkinson alleges a violation of Texas Human Resource Code § 121.003(a).  ECF No.

15  44 at 23–25.  As the Court previously explained, both state provisions generally apply

16  coextensively with the ADA.  *See* ECF No. 41 at 10.  The Court thus dismisses Hetherton's and

17  Wilkinson's claims under these state laws for the same reasons as those identified in the

18  discussion on Plaintiffs' ADA claims.

19       **D.    Unjust Enrichment Claims**

20       Plaintiffs raise unjust enrichment claims under California, Massachusetts, and Texas state

21  law.  Under the law of all three states, unjust enrichment only applies when it would be unjust for

22  that party to retain a benefit it wrongfully received. *See County of San Bernardino v. Walsh,* 158

23  Cal. App. 4th 533, 542–43 (2007) (explaining that unjust enrichment focuses "on the wrongdoer's

24  enrichment"); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013) (stating that

25  unjust enrichment occurs when a person has received a benefit which "it would be unconscionable

26  to retain"); *Sacks v. Dissinger*, 178 N.E.3d 388, 397 (Mass. 2021) (defining unjust enrichment

27  under Massachusetts law as the "retention of money or property of another against the

28  fundamental principles of justice or equity and good conscience") (quoting *Santagate v. Tower*,

United States District Court
Northern District of California

8

833 N.E.2d 171, 176 (Mass. 2005)).

Here, Plaintiffs' unjust enrichment claim is based on the same allegations and theory as their ADA claim—that Peet's "enriched itself at the expense of Plaintiffs and the putative class members by its illegal levying of the Surcharge for Non-Dairy Alternatives." ECF No. 44 ¶¶ 192, 197, 206. Because the Court has found that Peet's pricing policy does not constitute a discriminatory "surcharge" under the ADA, there is no wrongful conduct such that it would be unjust for Peet's to retain the benefit conferred by Plaintiffs in purchasing their drinks.

## CONCLUSION

For the reasons stated above, Peet's motion to dismiss is granted, and Plaintiffs' claims are dismissed without leave to amend. All other pending motions are denied as moot. The clerk is directed to enter judgment on behalf of Peet's and close the case.

**IT IS SO ORDERED.**

Dated: May 22, 2025

_____
JON S. TIGAR
United States District Judge